# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**UNITED STATES OF AMERICA,**

**v.**                    **Case No.: 8:24-cr-429-CEH-CPT-1**

**SLAWOMIR WINIEWSKI**

_____ /

## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The Defendant, SLAWOMIR WISNIEWSKI, by and through undersigned counsel, and moves this Honorable Court to suppress all evidence obtained as a result of the United States Coast Guard's unconstitutional and illegal search and seizure of the sailing vessel *Nicollet* and its crew. This motion is filed pursuant to the Fourth Amendment to the United States Constitution, Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, and International Norms of Decency.

## PRELIMINARY STATEMENT

This case involves the unconstitutional detention and search of a properly registered Polish sailing vessel and its crew by the United States Coast Guard. The Coast Guard's actions, including an excessive detention period, failure to verify registration with Polish authorities, and lack of reasonable suspicion, violated the Fourth Amendment and fundamental

principles of international law. The evidence obtained through these unconstitutional and illegal actions must be suppressed.

## STATEMENT OF FACTS

On September 20, 2024 at about 5:43 a.m. local time, the Coast Guard's Seventh District received information from the Coast Guard Cutter Resolute about a sailing vessel located approximately 197 nautical miles north of Barranquilla, Colombia. The Resolute was ordered to investigate and potentially seize the vessel.

On the same day at about 6:24 a.m. the Resolute launched a small boat to approach the vessel and determine its nationality. The small boat crew identified the vessel as a sailing vessel named *Nicollet*, carrying three people. The vessel was flying a Polish flag and showed its home port as Gdansk, Poland, the vessel was sailing in the Caribbean Sea. See Exhibit A.

At about 8:15 a.m. the boarding team from the small boat spoke with the vessel's captain, Slawomir Wisniewski, a Polish citizen. He informed the boarding team that they were transporting the vessel to Martinique for repairs in a dry dock, due to an overheating steering pump. The Coast Guard claims that the *Nicollet* was suspicious because it had rub marks, extra fuel canisters on deck, and was traveling north instead of east toward Martinique.

It is common for sailing vessels to sail in an indirect fashion because the prevailing winds may not be favorable for the vessel to sail directly to its

destination. In this instance the winds in the Caribbean Sea were coming out of the east and blowing to the west, the *Nicollet* was unable to sail directly to the east and had to sail north for a period of time and then change tack and sail south easterly. It is also common for small vessels such as the *Nicollet* to carry extra fuel and water since it takes many days to sail from Panama to Martinique. The boat requires fuel for electricity and to operate its auxiliary engine, the crew requires fresh water to bathe and drink.

When approaching the *Nicollet* it was at sail. The Coast Guard boarding team ordered the crew of the *Nicollet* to drop its sails and at that time the *Nicollet* was adrift. The Coast Guard were shown Polish Passports of Mr. Wisniewski and the crew members. The Coast Guard were also shown registration documents for the *Nicollet* showing that it was registered with the Polish Yachting Association in 2014. See Exhibit B[1]. The Polish registration of vessels under 24 meters in length was handled by the Polish Yachting Association until 2020 when Poland enacted new laws requiring the digitization of registrations and created "REJA24" which is a computerized registration process.[2] The new process did not have the effect of invalidating the older registrations.

---

[1] *See* the website of the Polish Yachting Association at https://pya.org.pl/polski-zwiazek-zeglarski/page/registration-of-yachts-and-other-vessels-reja24/.
[2] *See* the website of REJA24 at https://interesant.reja24.gov.pl/login.

The Coast Guard attempted to verify the registration information for the *Nicollet* but did not contact the Polish Yachting Association, which is indicated on the registration documents provided to the Coast Guard. Additionally, the Coast Guard failed to provide the Polish Authorities with complete information about the vessel or a copy of the registration documents.

The Coast Guard departed the *Nicollet* in the early afternoon around 3:00 p.m. The crew of the *Nicollet* had been required to be above deck during the visit for over seven hours. Additionally, upon the departure of the Coast Guard's small boat, the *Nicollet* was instructed to "stay put," meaning they were instructed not to leave the area. About 10 hours later the Coast Guard returned, boarded the *Nicollet* and searched it. This subsequent boarding was about 18 hours after the *Nicollet* had initially been told to lower her sails and was not allowed to leave the area. Narcotics were found in the vessel leading to this charge.

**MEMORANDUM OF LAW**

## I. Standard of Review

The Fourth Amendment protects against unreasonable searches and seizures, and this protection extends to vessels in international waters. When agents acting outside the United States act in a manner that "shocks the judicial conscience" the Court may exclude the evidence based on a federal

court's inherent supervisory powers over the administration of federal justice. *United States v. Emmanuel*, 565 F.3d 1324, 1330 (11th Cir. 2009). When evidence is obtained through unconstitutional or illegal means, it must be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

## II. The Coast Guard's Actions Shock the Judicial Conscience

The United States Coast Guard's conduct during the search and detention of the sailing vessel Nicollet was so egregious that it shocks the judicial conscience, warranting suppression of all evidence obtained. The Eleventh Circuit has established that evidence from foreign searches is inadmissible if the officials' conduct during the search shocks the judicial conscience. *Emmanuel* at 1330. This standard protects against actions that violate fundamental international norms of decency. *United States v. Rosero*, 42 F.3d 166, 169 (3d Cir. 1994).

The Coast Guard's detention of the Nicollet's crew was extraordinarily excessive and unreasonable. The crew was forced to remain above deck for over seven hours during the initial boarding. Following this prolonged detention, the Coast Guard instructed the vessel to "stay put" for an additional ten hours before conducting a second boarding. Such extended detention periods without concrete evidence of illicit activity demonstrate a shocking disregard for the crew's fundamental rights.

The Supreme Court has held that tactical delays for gathering evidence are impermissible. *Illinois v. Caballes, 543 U.S. 405, 407 (2005).* The Coast Guard's decision to prolong the detention for over 18 hours total represents a calculated decision to ignore constitutional protections and those provided by International Norms. *Id.*

Despite being presented with valid Polish registration documents and passports, the Coast Guard failed to properly verify the vessel's registration with the Polish Yachting Association. This failure demonstrates a deliberate indifference to international maritime protocols and the rights of foreign-flagged vessels. The vessel was clearly not stateless, as it was flying a Polish flag and had valid registration documents. Under international law, a vessel is considered stateless only if it lacks authorization to fly the flag of any recognized state. *Rosero* at 169.

The Coast Guard's conduct violated fundamental principles of international maritime law and custom. Their unfounded suspicion based on rub marks, extra fuel canisters, and the vessel's travel direction does not justify the extensive delays and multiple boardings. The captain provided a legitimate explanation for their journey - traveling to Martinique for repairs. The Coast Guard's disregard of this explanation and valid documentation represents a violation of international norms of decency.

**III. The Coast Guard's Actions Violated the Fourth Amendment**

Section 89(a) of Title 14 of the United States Code grants the USCG the authority to conduct stops and searches of American vessels within and outside the United States' territorial waters. 14 U.S.C. § 89(a)(2016). Although this section does not specifically limit this authority to domestic vessels, it does not expressly include foreign flagged ships. *See* Linda A. Newland, *Searches and Seizures at Sea: Trying to Balance Governmental Interests Against the Fourth Amendment*, 16 Tul. Mar. L.J. 319, 322 (1992).

According to the United States Supreme Court, section 89(a) only authorizes the USCG to seize a foreign vessel that is in international waters if reasonable suspicion exists that those aboard the vessel are engaged in a conspiracy to smuggle contraband into the United States. *United States v. Williams*, 617 F.2d 1063, 1076 (5th Cir. 1980). Thus, in this case, there must not only have been reasonable suspicion of said criminal activity but there must also be a nexus between the cocaine seized from the foreign vessel found in international waters and the United States to avoid violating the Constitution. *United States v. Postal*, 589 F.2d at 884 (5th Cir 1979). In *United States v. James-Robinson*, the court held that a nexus can be found when the circumstances involve American citizens, a U.S. territory, U.S. vessels, the intended delivery of the contraband to the United States, or a threat to the national security of the government functions of the United

States. *United States v. James-Robinson*, 515 F. Supp. 1340, 1347 (S.D. Fla 1981).

As with probable cause, there is no litmus test for reasonable suspicion. *United States v. Reeh*, 780 F.2d 1541, 1544 (11th Cir. 1986). Reasonable suspicion must be based on specific articulable facts and this Court must look at the totality of the particular circumstances in each case and make rational inferences from those facts. *Id*. Turning to the specific facts in the present case, the Court should conclude that no suspicion existed and any suspicion now claimed was not reasonable. The vessel was first spotted approximately 197 miles north of Barranquilla, Colombia. This location is almost nearly halfway between Colombia and the Dominican Republic, and is due west of Martinique. The occupants of the vessel were Polish citizens and nationals and the government had no evidence at that time that the defendants had the intent to distribute cocaine, let alone to distribute it in the United States. Some factors that courts have looked at to determine whether there was reasonable suspicion to stop and board a vessel are: maritime patrol aircraft oversaw crew members loading of contraband; tobacco-like sweepings trailing the ship's stern; jettison of charts and other objects by the crew; the presence of a shrimper in an area not fished for shrimp; the failure to have running lights on at 11:30 p.m.; no flag showing; the name of the vessel's home port covered by nets; vessel riding low in the water; refusal of the crew to respond

to radio messages, loud speaker hailing and spotlight illumination; evasive maneuvers and course changes, suspicious-and varying-registration numbers; flying flag upside down; radio equipment not common to vessels of particular size and type, but often utilized by drug smugglers; extra fuel drums, being on the route known to be frequented by drug smugglers; boat was on DEA list of vessels suspected of being involved in illicit drug trafficking (*See*: *United States v. Williams*, 617 F.2d 1063, 1077 (5th Cir. 1980); *United States v. Ricardo*, 619 F.2d 1124, 1130 (5th Cir. 1980); *United States v. Burke*, 716 F.2d 935, 939 (1st Cir. 1983); *United States v. Alvarez-Mena*, 765 F.2d 1259, 1268 (5th Cir. 1985)).

In this case, the only factors upon which the USCG based their alleged suspicion that the occupants of the vessel were engaged in a drug smuggling operation were the vessel's location and heading, the fact that extra fuel was on deck, and purported rub marks on the side of the vessel. Because these factors, alone, do not provide a reasonable ground for suspecting the vessel to be engaged in drug smuggling to the United States, interdiction of the vessel was not authorized. Further, even if the stopping of the vessel was authorized, any alarm the Coast Guard had at the appearance of the vessel should have been dispelled by the information, documentation, and cooperation of the crew.

## CONCLUSION AND RELIEF REQUESTED

The Coast Guard's actions in this case both shock the judicial conscience and violate fundamental Fourth Amendment protections. The evidence obtained through these unconstitutional and illegal actions must be suppressed to preserve the integrity of our justice system and respect for international maritime law.

WHEREFORE, based on the foregoing, Defendant Slawomir Wisniewski respectfully requests that this Honorable Court:

1.  Suppress all physical evidence seized from the vessel *Nicollet*;

2.  Suppress all statements made by the defendant and crew members during the unconstitutional and illegal detention;

3.  Suppress all evidence derived from the unconstitutional and illegal search and seizure under the fruit of the poisonous tree doctrine;

4.  Grant an evidentiary hearing on this motion; and

5.  Grant such other relief as this Court deems just and proper.

DATED this 14th day of March 2025.

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER

*/s/ Ryan J. Maguire*
Ryan J. Maguire, Esq.
Assistant Federal Defender

Florida Bar No. 117534
400 North Tampa St. Suite 2700
Tampa, FL 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: ryan_maguire@fd.org

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 14th day of March 2025, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

Ashley Haynes, AUSA

*/s/ Ryan J. Maguire*
Ryan J. Maguire, Esq.
Assistant Federal Defender